George L. FISHER, Respondent,

v.

CITY OF INDEPENDENCE, Missouri, Appellant.

No. 49155.

Supreme Court of Missouri,

En Banc.

Sept. 9, 1963.

John F. Thice and Gilbert R. Titus, Independence, for appellant.

Arthur B. Taylor, Independence, S. David Trusty, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondent.

LEEDY, Judge.

This is a workmen's compensation proceeding wherein the City of Independence has appealed from an order of the Industrial Commission, which order (made on motion of the claimant-respondent, George L. Fisher) vacated an award of compensation in favor of claimant, and dismissed his claim. The appeal went to the Circuit Court of Jackson County, where the order was affirmed. On the city's further appeal from the circuit court's judgment of affirmance, the Kansas City Court of Appeals reversed, and ordered that the cause be remanded by the circuit court to the commission with directions to reinstate the award (Fisher v. City of Independence, Mo.App., 350 S.W.2d 268). Upon application of claimant-respondent to this court, the case has been transferred here for final determination under the provisions of Art. V, § 10, Const. of Mo., V.A.M.S., and Rule 84.05, V.A.M.R.

The facts are stated at some length in the opinion of the Court of Appeals to which reference is made, but the following will sufficiently indicate the situation giving rise to the present issues: Fisher was employed by the city, and on June 20, 1957, was injured in the course of his employment. On June 6, 1958, he filed in the circuit court a common law action against the city to recover damages for the injuries so sustained. The city in due time filed its "motion to dismiss" which, after averring that "plaintiff has failed to state any cause of action under the law for which relief can be granted," directly and more specifically challenged Fisher's right to maintain the action in any event "for the further reason that the plaintiff, George L. Fisher, on the date of the alleged injury was subject to the provisions of the Missouri Work-

men's Compensation law, as set out by the Revised Statutes of the State of Missouri for 1949, and he has no action under the common law." On July 11, 1958, the court sustained said motion and dismissed the action, as prayed by the movant.

On July 17, 1958, Fisher filed with the Division of Workmen's Compensation his claim (now dismissed) for compensation for the aforesaid personal injuries suffered June 20, 1957, alleging the same to have been sustained by accident arising out of and in the course of his said employment. The course of the proceeding thus initiated by him, and the considerations affecting the making of the order appealed from sufficiently appear from these findings as made by the commission, and embodied in the order itself, viz.:

"The Commission having considered said motion [to vacate the award and to dismiss the claim] and the answer thereto filed by the employer, City of Independence, finds that the Commission has jurisdiction to entertain said motion inasmuch as thirty days have not elapsed since the entering of the award aforesaid; that the employee filed his claim on July 17, 1958, alleging that the City of Independence was a self insurer; that the City of Independence filed its answer thereto on July 25, 1958, answering that it was a self insurer; that on March 5, 1959, the date of the hearing before the referee, counsel for the City of Independence stated the city was a self insurer; that the Commission's award of July 28, 1959, recited that the employer was a self insurer; that since the date of the entering of the Commission's award, the parties have learned that while the City of Independence has elected to come under the provisions of Chapter 287, RSMo 1949, it is not, in truth and in fact, qualified as a self insurer thereunder; that the parties were proceeding under a mutual mistake of fact; and, further, that the filing of the claim by the employee herein did not constitute an election of remedies for the reason that it was predicated on a mistake of fact. See: 28 C.J.S. [Election of Remedies] Section 23, and Missouri cases cited thereunder. We find! and believe that Neff vs Baiotto Coal Co. [Mo.], 234 S.W.2d 578, on which the employer relies, is clearly distinguishable on the facts."

The question as to the city's status as a self-insurer arises out of the following facts: In 1929 or 1930 the city duly elected to bring itself within the provisions of "The Workmen's Compensation Law," and gave the commission notice thereof. Whether it proceeded at once to qualify as a self-insurer does not appear; but it is undisputed that in January, 1936, the city did self-insure its compensation liability by depositing in escrow with the Bank of Independence $3,000 (either in cash or securities) in compliance with the commission's order of January 1, 1936, authorizing the same. Such was the state of affairs when on September 30, 1949, the Attorney General held that part of the statute (§ 3693, ¶ 5, RSMo 1939—now § 287.090, subsection 2, RSMo 1949 and V.A.M.S.) authorizing municipalities and certain other public bodies to elect to come within the provisions of the compensation act to be unconstitutional. The commission thereafter sent to the city a letter from the commission's attorney dated November 17, 1949, which letter, after stating and advising the city that the Attorney General had so ruled (on the date mentioned), continued: "It follows, therefore, that the attempt to bring your employees under the provisions of the Missouri Workmen's Compensation Law by filing an acceptance of it with this Division is, and has always been, null and void, as is our authorization of you as a self-insurer. Your self-insurer's authority, dated January 1, 1936, is, therefore, cancelled, effective September 30, 1949 (the date of the Attorney General's opinion), and the escrow agreement, dated January 10, 1936, is also cancelled as of said date. The escrow agent is hereby author-

ized to return to you the securities therein described."

Subsequently, the Attorney General re-examined the constitutional question, and in an opinion dated February 7, 1950, concluded that his prior opinion was erroneous. In overruling and withdrawing such prior opinion, he came to the further conclusion that the public employers named in said statute (including municipalities) "may severally elect to bring themselves within the terms of the Workmen's Compensation Law." Thereafter the division's director dispatched the following letter to the city under date of February 24, 1950:

"On February 7, 1950, the Attorney General issued an opinion holding as *Constitutional* the provision of the Missouri Workmen's Compensation Law that permits municipalities and other political subdivisions to accept the provisions of that law. By this opinion, the Attorney General reverses the position taken in the opinion of September 30, 1949, copy of which was sent to you.

"Your status as an employer under the workmen's compensation law, therefore, is the same as before the opinion of September 30, 1949. At that time you were an authorized self-insurer, but such authority was canceled because of the Attorney General's opinion and the surety ordered released.

"Your authority as a self-insurer will be reinstated upon your prompt advice that you wish it to be, to become effective when you comply with the requirement of the minimum surety of $10,000 by one of three ways: (1) An approved surety bond; (2) depositing in escrow approved securities; (3) depositing cash in escrow.

"Will you please advise at once."

No response of any kind was made to the foregoing letter, nor did the city at that time take any action looking toward compliance with the specified requirement of $10,000 minimal surety. It is not con-tended that anything was done by the city in that connection during the next ensuing eight years, nor until more than two years after the casualty occurred when there was an exchange of the following correspondence between the Independence city counselor's office and the Division of Workmen's Compensation concerning the city's status as a self-insurer:

"July 16, 1959

"Mr. John Gloriod
"% Department of Labor
"Workmen's Compensation
"Jefferson City, Missouri

"Re: City of Independence, Missouri

"Dear Sir:

"It has recently been brought to my attention that there is the possibility that the City of Independence, Missouri, is not properly classed as a self-insurer under law. It was my understanding that the City elected to come under the Workmen's Compensation Law, and was permitted to be a self-insurer several years ago.

"If you have any information in regard to this matter, I would appreciate hearing from you in regard thereto. Also, if we are not self-insurers, please advise me what is necessary for the City to do to comply with your rules and regulations so that we will be self-insurers in the future. If we are not now classed as self-insurers, please furnish me with the necessary forms for us to use in complying with your laws.

"Your very truly,
"/s/ Gilbert R. Titus
jsv
"GILBERT R. TITUS
"Assistant City Counseler"
"GRT/jsv

[Note: The date of the above letter is subsequent to that of the referee's award in claimant's favor, and twelve days prior to the date of the full commission's "final

award" as made on the city's application for review.]

"July 17, 1959

"Gilbert R. Titus, Assistant City
    Counselor
"First National Bank
"Independence, Missouri

"Re: City of Independence, Missouri

"Dear Mr. Titus:

"The City of Independence was first granted authority to self-insure its compensation liability on January 13, 1936, and this authority remained constantly in force until September 30, 1949, about which time the Attorney General of Missouri rendered an opinion holding that the provisions of Section 3693, RSMo 1939, now 287.090, was unconstitutional in so far as it applied to municipalities or other political subdivisions. In accordance with that opinion we cancelled the self-insurer's authority of all such municipalities as had accepted the compensation law; also cancelling the bonds or escrow agreements of such cities, authorizing the escrow agent to return to you these securities described.

"Thereafter on or about February 24, the Attorney General reversed his opinion of November 17 and held that cities and municipalities might accept the provisions of the Workmen's Compensation Law and provide for the payment of its obligations thereunder out of its general revenue fund. We thereupon wrote all such municipalities, including the City of Independence, to that effect advising that their status under the Workmen's Compensation Law was the same as it had been prior to our letter of November 17; that is that their acceptances were still valid but that it would be necessary to provide security, such as all self-insurers are required to post, and that the amount would be the minimum amount of $10,000.00, which had in the meantime been changed from a minimum of $3,000.00.

"We never received any acknowledgment of this letter from the City of Independence and, according to our records as they now stand, the City of Independence is not a self-insurer for its workmen's compensation liability.

"If you desire to reinstate as a self-insurer, we suggest that since it has been some nine years since our letter of February 24 it would be a better procedure to make a new application on the enclosed forms, submit all three completed forms, and we will then advise you of the amount of security required. There will be no investigation fee required.

"Yours very truly,

"Enc.           John A. Gloriod,
"jag:lc         Legal Adviser"

Thereafter, in September, 1959, the city did file its application to become a self-insurer, as suggested, and posted bond in the requisite sum of $10,000. On approval of the bond, the city's authority to operate as a self-insurer was "reinstated as of September 22, 1959," and the city notified thereof by letter in the language just quoted.

The foregoing correspondence and the matters and things done pursuant to it (even though long subsequent to the particular time with which we are concerned, to wit, June 20, 1957) are not set forth as having determinative effect, but because factually they have a strong tendency to support the action of the commission in making the order appealed from unless it can be said that, as a matter of law (as held by the Court of Appeals) the city continued to remain a qualified self-insurer notwithstanding the opinion of the Attorney General (later reversed), and the subsequent efforts of the division to require the city to again comply with the requirements as to security in order to make reinstatement of its authoity as a self-insurer effective.

The reasoning underlying the holding thus made by the opinion of the Court of

Appeals was, in essence, this: First, that cancellation of the city's workmen's compensation coverage could be effected only through "formal action of record by the Commission and cannot result from the voicing of an opinion by its attorney," and that the record was insufficient to show any such formal record action on the part of the commission; and, secondly, "Even if the letters [dated November 17, 1949, and February 24, 1950] were based on action taken by the Commission itself on its own initiative, the same were ineffective" because of want of notice to the city under certain of the commission's own rules.

We shall not inquire into the first of the foregoing bases whereon said opinion rests because even though the purported cancellation was not effected by and through formal record action of the commission so declaring, other means of termination were not only open, but at least one was self-executing, as provided by the very terms of Rule 10, § 1, which was under scrutiny and applied (erroneously, we believe) by the Court of Appeals. So it is out of the latter section of said rule that our disagreement arises with the second of the foregoing bases, i. e., ineffectuality of termination "because [to quote the opinion] no notice was given as specifically required by its own rules (Rule 10, Sections 2 and 11, supra)." (Actually, the sections of said rule previously cited in said opinion were § 1 and § 11, but not § 2; the latter does not relate to notice, so reference to it as having been cited "supra" was obviously an inadvertence, and we take it that § 1 was intended.)

With respect to the continuing force and effect or duration of self-insurance authority, once granted, Rule 10, § 1, provides as follows: "Such self-insurance authority, if granted, will continue in force and effect until revoked by the Division upon notice and hearing on show-cause order or until withdrawn by the employer, except that upon failure of a self-insurer to continuously maintain security, hereinafter provided for, in the amount required by the Division, such self-insurance authority shall forthwith terminate without such notice and hearing."

It will be noted that the commission's communication of February 24, 1950, distinctly informed the city that its self-insurer's authority would be "reinstated upon your prompt advice that you wish it to be, to become effective when you comply with the requirement of the minimum surety of $10,000 by one of three ways: (1) An approved surety bond; (2) depositing in escrow approved securities; (3) depositing cash in escrow." (Said minimum security required was fixed then, as now, by Rule 10, § 2, which also specified the three optional ways of furnishing the same.)

▮ Conceding for present purposes that in consequence of the Attorney General's two opinions and the matters and things done or attempted to be done pursuant to such opinions as reflected in the correspondence hereinabove set out, the city as lately as February 24, 1950 (the date of the letter last above mentioned), continued to remain within the coverage and protection of the Workmen's Compensation Law as a qualified self-insurer, the fact remains that during the entire period of nine years thereafter it wholly failed to maintain the $10,000 minimum security prescribed by Rule 10, § 2, or any whatever. True, the city was informed its authority would be "reinstated," but the use of that word is of no significance in the circumstances we are considering as affecting the obligation of the city to maintain security in the required amount as the condition upon which its self-insurance authority would rest. The matter was thus brought squarely and directly within the terms of Rule 10, § 1, governing revocation for that specific default; that is, "such self-insurance authority shall forthwith terminate without such notice and hearing." It follows that the city's self-insurance authority had automatically terminated long prior to the date of Fisher's accident.

▮ Such default and termination gave rise to and made applicable the em-

**316**

ploye's statutory right to elect to bring action against the employer for damages, or pursue his remedy for compensation under the act with payments commuted and immediately payable. § 287.280, RSMo 1959 and V.A.M.S. As stated, he first brought a common law action, but it was dismissed on the city's motion and under its representation that it was a self-insurer under the act, whereas in fact it was not. In such a situation, the city will not be heard to say that the action of plaintiff in thereafter filing claim for workmen's compensation constituted an election of remedies on his part, at least in the absence of knowledge of the true facts (as here) concerning the city's status as being or not being a self-insurer.

■ The city makes the contention that the commission acted without or in excess of its powers when it entered the order appealed from. In this connection it invokes the provision of § 287.490 which declares that the "final award of the commission shall be conclusive and binding" unless appealed from within thirty days from the date thereof, and contends that the final award of July 28, 1959, came within the purview of such provision, and said award not having been appealed from, the power of the commission was thereby exhausted, except for review of such award on the commission's own motion or upon application of any party in interest "on the ground of a change in condition" under § 287.470 (a contingency not here involved). The contention must be disallowed. In the first place, the thirty-day period for appealing had not yet expired when the offending order was made so that the conclusive and binding nature and effect with which the statute would endow an unappealed final award had not then attached. Moreover, while it is true that power to take action of the nature here involved is not conferred upon the commission by statute specifically so providing, it by no means follows that the commission is without authority so to do. On the contrary, we think it plain, and accordingly hold, that such power or authority is to be implied from the very nature of the commission's function in determining not only the facts whereon its jurisdiction rests, but also the liability under the act of the persons before it. Compare Harris v. Pine Cleaners, Mo., 296 S.W.2d 27.

From what has been said it follows that the order appealed from should be, and it is, affirmed.

All concur, except HOLMAN, J., not sitting.